**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

In re:                                                                        **Chapter 13**
                                                                                   **Case No.: 14-11424-AJC**
**ANA MARIA JOHNSON,**

      **Debtor.**
_____/

<u>**MOTION TO CONFIRM NO STAY IS IN EFFECT**</u>

      **COMES NOW**, Secured Creditor, **BSI FINANCIAL SERVICES, AS SERVICING AGENT FOR HMC ASSETS, LLC SOLELY AS SEPARATE TRUSTEE OF COMMUNITY DEVELOPMENT FUND I TRUST** (the "Secured Creditor"), by and through its undersigned counsel, moves pursuant to 11 U.S.C. § 362) and Federal Rules of Bankruptcy Procedure 4001, that the Court enter an order confirming that no stay is in effect and shows the Court as follows:

      1.      On January 22, 2014, the Debtor Ana Maria Johnson (the "Debtor") filed for bankruptcy protection under Chapter 13 of the Bankruptcy Code.

      2.      On March 25, 2014, the Debtor filed the Chapter 13 Plan (D.E. #17) (the "Plan").

      3.      The Debtor owns certain real property in Broward County, Florida, commonly described as *7212 S.W. 149th Court, Miami, FL 33193* and legal description as follows:

      **LOT 1, BLOCK 12, SUNSET SHORES, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 127, PAGE 36, PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.**

      4.      On July 22, 2014, the Court entered an Order Confirming Chapter 13 Plan (D.E. #46) (the "Confirmation Order").

5.      Pursuant to paragraph 4 of the Confirmation Order, *"If the Plan does not provide for payments to a secured creditor, such creditor is granted in rem stay relief to pursue available state court remedies against any property of the debtor which secures the creditor's claim."*

6.      On November 15, 2016, the Debtor filed the First Modified Chapter 13 Plan (D.E. #58)(the "Modified Plan').  Secured Creditor asserts that pursuant to the Modified Plan, the Debtor's intention as to the Property did not change.

7.      Pursuant to the Confirmation Order, in rem relief from stay is effective as of the date of entry of the order dated July 22, 2014.

8.      On October 23, 2007, the Debtor executed and delivered a promissory Note ("Note") to original lender, Advantage One Mortgage Corporation, in the original principal amount of One-Hundred Ninety-Six Thousand and 00/100 Dollars ($196,000.00).   The amount owed to Secured Creditor by the Debtor is secured by that certain Mortgage of even date and recorded on February 12, 2008 in Book 26212, Pages 1299 - 1314, of Miami-Dade County, Florida, mortgaging and encumbering the Property described in the mortgage then owned by and in possession of the Debtor (the "Mortgage")(collectively, the "Loan Documents").

9.      Secured Creditor is the holder of the Note and Mortgage by virtue of the Allonge to Note and Assignment(s) of Mortgage attached to the Loan Documents and is entitled to enforce the Note and Mortgage on the Debtor's Property.  True and correct copies of the Loan Documents are attached hereto as **Composite Exhibit "A"**.

10.      Based on the foregoing, this Court should enter an order confirming that no stay is in effect and allow the Secured Creditor to proceed with *in rem* remedies in State Court to enforce its lien rights pursuant to the Loan Documents.

11.    Secured Creditor files this Motion seeking to confirm that the automatic stay is not in effect as to the Property.

12.    Secured Creditor will suffer irreparable injury if it is not granted relief from automatic stay to proceed against the collateral.

13.    Secured Creditor requests language in the order to reflect that it will survive any subsequent conversion of the case to another chapter.

14.    Secured Creditor seeks waiver of the fourteen (14) day stay of the Order granting the relief sought pursuant to Bankruptcy Rule 4001(a)(3).

15.    Attached as **Exhibit B** is a copy of the Proposed Order.

16.    Furthermore, Secured Creditor has retained the undersigned law firm and is now obligated to pay the firm reasonable attorneys' fees and costs for the prosecution of this Motion in the instant bankruptcy case.

**WHEREFORE**, movant, BSI Financial Services, as Servicing Agent for HMC Assets, LLC solely as Separate Trustee of Community Development Fund I Trust moves this Court to enter its Order confirming no stay is in effect so as to allow the Secured Creditor to proceed with *in rem* remedies in State Court to enforce its lien rights pursuant to the Loan Documents, waiving the fourteen (14) day stay of the Order granting the relief sought pursuant to Bankruptcy Rule 4001(a)(3),  and grant such other further relief as the Court may deem just and proper.
**Dated this 27th day of November, 2017.**

Respectfully submitted:
**BERGER FIRM P.A.**
*Attorneys for Secured Creditor*
3050 Biscayne Blvd. - Suite 402
Miami, Florida 33137
Telephone: (305) 501.2808
Facsimile: (954) 780.5578

By: ___/s/ Chase A. Berger_____
Chase A. Berger, Esq.
Florida Bar No. 083794
chase@bergerfirm.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on <u>November 27, 2017</u>, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

By:<u>     /s/ Chase A. Berger          </u>
Chase A. Berger, Esq.

## CERTIFICATE PURSUANT TO LOCAL RULE 9011-4(B)(1)

I certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court as set forth in Local Rule 2090-1(A).

By:<u>     /s/ Chase A. Berger          </u>
Chase A. Berger, Esq.

## SERVICE LIST

*Debtor*
**Ana Maria Johnson**
7212 S.W. 149th Court
Miami, FL 33193

*Debtor's Counsel*
**Mitchell J. Nowack, Esq.**
8551 Sunrise Blvd. - #208
Plantation, FL 33322

*Trustee*
**Nancy K. Neidich**
P.O. Box 279806
Miramar, FL 33027

*U.S. Trustee*
**Office of the US Trustee**
51 S.W. 1st Avenue - Suite 1204
Miami, FL 33130

MIN: ▮▮▮▮▮▮▮▮▮▮▮ **NOTE** Loan Number: ▮▮▮▮▮▮▮▮

OCTOBER 23, 2007       PLANTATION       FLORIDA
     [Date]                        [City]                        [State]

7212 SW 149 COURT, MIAMI, FLORIDA 33193
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $196,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is ADVANTAGE ONE MORTGAGE CORP., A CORPORATION (CFL # CL0300882) .

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on DECEMBER 1, 2007 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on NOVEMBER 1, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 8151 PETERS ROAD, #2000, PLANTATION, FLORIDA 33324 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $1,421.14 .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

Borrower Initials: A.M.J. _____ _____ _____ _____

WE HEREBY CERTIFY THAT THIS
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL
CHOICE TITLE OF SOUTH FLORIDA
BY _____

# COMPOSITE EXHIBIT "A"

F13210.not

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

   **(A)  Late Charge for Overdue Payments**

   If the Note Holder has not received the full amount of any monthly payment by the end of  15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        5.000      % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

   **(B)  Default**

   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

   **(C)  Notice of Default**

   If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

   **(D)  No Waiver By Note Holder**

   Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

   **(E)  Payment of Note Holder's Costs and Expenses**

   If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

   Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

   Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

   If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

   I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

   This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

Borrower Initials: A.M.J.  _____  _____  _____  _____

the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.


_Ana Maria Johnson_ _____ (Seal)                     _____ (Seal)
ANA MARIA JOHNSON                        –Borrower                                                              –Borrower


_____ (Seal)                     _____ (Seal)
                                                     –Borrower                                                              –Borrower


_____ (Seal)                     _____ (Seal)
                                                     –Borrower                                                              –Borrower


PAY TO THE ORDER OF:
  WITHOUT RECOURSE

ADVANTAGE ONE MORTGAGE CORP., A CORPORATION

BY: _____                              *[Sign Original Only]*

ITS: Gilbert Torres, President

FLORIDA FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3210 1/01                                    Page 3 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Pl3210.not

# ALLONGE TO NOTE

LOAN NUMBER: ████████

LOAN AMOUNT: $196,000.00

PROPERTY ADDRESS: 7212 SW 149 COURT, MIAMI, FLORIDA 33193

ALLONGE TO NOTE DATED OCTOBER 23, 2007

IN FAVOR OF ADVANTAGE ONE MORTGAGE CORP.

AND EXECUTED BY ANA MARIA JOHNSON

PAY TO THE ORDER OF COUNTRYWIDE BANK, FSB, 1800 TAPO CANYON RD., SIMI VALLEY, CA 93063

WITHOUT RECOURSE ADVANTAGE ONE MORTGAGE CORP.

BY _____

TITLE: Gilbert Torres, President

DocMagic eFörms 800-649-1362
www.docmagic.com

Alln.cw

CFN 2008R0119181
OR Bk 26212 Pgs 1299 - 1314; (16pgs)
RECORDED 02/12/2008 15:42:20
MTG DOC TAX 686.00
INTANG TAX 392.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

This Instrument Prepared By:
Gilbert Torres
8151 Peters Rd #2000
Plantation, FL 33324

After Recording Return To:
ADVANTAGE ONE MORTGAGE CORP.
8151 PETERS ROAD, #2000
PLANTATION, FLORIDA 33324
Loan Number: 173988795

Record and Return to:
Choice Title of South Florida
8151 Peters Road Suite 2200
Plantation, FL 33324
File No: 071301

[Space Above This Line For Recording Data]

# MORTGAGE

MIN: ██████████████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "**Security Instrument**" means this document, which is dated OCTOBER 23, 2007 , together with all Riders to this document.
**(B)** "**Borrower**" is ANA MARIA JOHNSON AND MARCO A TAPIA, WIFE AND HUSBAND

Borrower is the mortgagor under this Security Instrument.
**(C)** "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D)** "**Lender**" is ADVANTAGE ONE MORTGAGE CORP.

Lender is a CORPORATION organized
and existing under the laws of FLORIDA
Lender's address is 8151 PETERS ROAD, #2000, PLANTATION, FLORIDA 33324

**(E)** "**Note**" means the promissory note signed by Borrower and dated OCTOBER 23, 2007
The Note states that Borrower owes Lender ONE HUNDRED NINETY-SIX THOUSAND AND 00/100 Dollars (U.S. $ 196,000.00 ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than NOVEMBER 1, 2037
**(F)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

Borrower Initials: A.M.T  M.A.T _____  _____  _____

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01
Page 1 of 15

DocMagic *ePforms* 800-649-1362
www.docmagic.com

3010.mzm

**(G)**    **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)**    **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐   Adjustable Rate Rider        ☐   Planned Unit Development Rider
☐   Balloon Rider                  ☐   Biweekly Payment Rider
☐   1-4 Family Rider            ☐   Second Home Rider
☐   Condominium Rider        ☐   Other(s) [specify]

**(I)**    **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)**    **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)**    **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)**    **"Escrow Items"** means those items that are described in Section 3.

**(M)**    **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)**    **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)**    **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)**    **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)**    **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Borrower Initials: A.M.J   M.A.T                                  

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01                Page 2 of 15             *DocMagic eForms* 800-649-1362
www.docmagic.com

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

| COUNTY | of | MIAMI-DADE | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 3049330470940

which currently has the address of          7212 SW 149 COURT
                                                    [Street]

MIAMI                        , Florida      33193      ("Property Address"):
[City]                                   [Zip Code]

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower Initials: _A.M.J._  _M.A.T_  _____  _____  _____  _____

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01                              Page 3 of 15

DocMagic € Featured 800-649-1362
www.docmagic.com

33010.mzm

Escrow File No █████

## EXHIBIT "A"

**Lot 1 at Block 12 of SUNSET SHORES, according to the Plat thereof, as recorded in Plat
Book 127, Page 36 of the Public Records of Miami-Dade County, Florida.**

**7212 SW 149th Court Miami, FL 33193**

A. M. J.

M. A. T.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and

Borrower Initials: _A.M.J._   _M.A.T_   _____   _____   _____   _____

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01
Page 4 of 15

DocMagic *ePorms* 800-649-1362
www.docmagic.com

Fl3010.mzm

assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder

Borrower Initials: _A M.J._   _M.A.T_   _____   _____

---

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01                                  Page 5 of 15

DocMagic *eFerms* 800-649-1362
www.docmagic.com

FI3010.mzm

of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.

Borrower Initials: A.M.J  M.A.T  ___ ___ ___ ___

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01                                    Page 6 of 15                              DocMagic *@Forms* 800-649-1362
                                                                                                    www.docmagic.com

Fl3010.mtg.6

If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Borrower Initials: A.M.J  M.A.T _____ _____ _____ _____

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01
Page 7 of 15

DocMagic *eFarms* 800-649-1362
www.docmagic.com

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument; including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share

Borrower Initials: A.M.J    M.A.T    _____    _____    _____    _____

of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

    **(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

    **(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

    **11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

    If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

    In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

    In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

    In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

    If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower Initials: A.M.J.    M.A.T

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01
Page 9 of 15

DocMagic *eParms* 800-649-1362
www.docmagic.com

13010.mzm

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

Borrower Initials: A.M.J  M.A.T  _____  _____  _____

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01                          Page 10 of 15

*DocMagic* *eFarms* 800-649-1362
www.docmagic.com

Fl3010.mzm

Book26212/Page1309    CFN#20080119181          Page 11 of 16

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

Borrower Initials: A.M.T.    M.A.T    _____   _____   _____   _____

_____

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01                                        Page 11 of 15                        DocMagic *eForms* 800-649-1362
www.docmagic.com

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized

Borrower Initials: A.M.T   M.A.T   _____   _____   _____   _____

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01
Page 12 of 15

DocMagic *eForms* 800-649-1362
www.docmagic.com

3010.mzm

Book26212/Page1311    CFN#20080119181    Page 13 of 16

to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

Borrower Initials: A.M.J.   M.A.T   _____   _____   _____

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01
Page 13 of 15

DocMagic ⓔⒻⓞⓡⓜⓢ 800-649-1362
www.docmagic.com

fl3010.mzm

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
-Borrower
ANA MARIA JOHNSON
7212 SW 149 COURT, MIAMI,
FLORIDA 33193

_____ (Seal)
-Borrower
MARCO A TAPIA
7212 SW 149 COURT, MIAMI,
FLORIDA 33193

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Signed, sealed and delivered in the presence of:

_____
Witness

_____
Witness

TINA RIOS

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01
Page 14 of 15

DocMagic *eForms* 800-649-1362
www.docmagic.com

OR BK 26212 PG 1314
LAST PAGE

———————————— [Space Below This Line For Acknowledgment] ————————————

STATE OF FLORIDA

COUNTY OF __MIAMI DADE__

    The foregoing instrument was acknowledged before me this __23rd__ day of __OCTOBER, 2007__

by __ANA MARIA JOHNSON AND MARCO A TAPIA__

_____

_____

who is personally known to me or who has produced __FL DL__

                                           (Type of Identification)

as identification.

                                               Signature

NOTARY PUBLIC-STATE OF FLORIDA
Tina Rios
Commission # DD474952
Expires:  SEP 22, 2009
Bonded Thru Atlantic Bonding Co., Inc.

                                     Tina Rios
                                     Name of Notary

          (Seal)

                                     Title

                                     Serial Number, if any

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3010 1/01
Page 15 of 15

DocMagic eForms 800-649-1362
www.docmagic.com

CFN  2008R0119182
OR Bk 26212 Pss 1315 - 1317; (3pss)
RECORDED 02/12/2008 15:42:20
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

This Instrument Prepared By:

Gilbert Torres
8151 Peters Rd #2000
Plantation FL 33324

After Recording Return To:
ADVANTAGE ONE MORTGAGE CORP.
8151 PETERS ROAD, #2000
PLANTATION, FLORIDA 33324

Loan Number: ███████

——— SPACE ABOVE THIS LINE FOR RECORDER'S USE ———

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, ADVANTAGE ONE MORTGAGE CORP. ITS SUCCESSORS
AND ASSIGNS, HEREBY ASSIGNS AND TRANSFERS TO MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC., ITS SUCCESSORS AND
ASSIGNS, P.O. BOX 2026 FLINT, MICHIGAN 48501-2026, ALL ITS
RIGHT, TITLE AND INTEREST IN AND TO A CERTAIN MORTGAGE EXECUTED
BY ANA MARIA JOHNSON AND MARCO A TAPIA, WIFE AND HUSBAND TO
ADVANTAGE ONE MORTGAGE CORP.

and bearing the date of the   OCTOBER 23, 2007
and recorded either
☑  concurrently herewith; or
☐  as Instrument No.                     on                              in book 26212 page 1299
in the Official Records in the County Recorder's office of                       MIAMI-DADE          County,
FLORIDA                         , describing land therein as:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 3049330470940

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest,
and all rights accrued or to accrue under said Mortgage.  The original principal amount due under this note(s) is
$ 196,000.00

FLORIDA ASSIGNMENT OF MORTGAGE/CORPORATION OR PARTNERSHIP
10/24/06                                          Page 1 of 2

*DocMagic eForms* 800-649-1362
www.docmagic.com

Signed, sealed and delivered in the presence of:
Witnesses:

**TINA RIOS**

Ann Tango

Ann Tango

STATE OF FLORIDA                    )
                                    ) SS.
COUNTY OF MIAMI-DADE                )
        Broward

The foregoing instrument was acknowledged before me this 23rd day of OCTOBER, 2007 by Gilbert Torres as President for ADVANTAGE ONE MORTGAGE CORP.

Signature

**TINA RIOS**
(Print, Type or Stamp Commissioned Name of Notary Public)

Personally known ✓ or
Produced Identification NA
Type of Identification Produced: NA

My Commission expires:

NOTARY PUBLIC-STATE OF FLORIDA
Tina Rios
Commission # DD474952
Expires: SEP. 22, 2009
Bonded Thru Atlantic Bonding Co., Inc.

(Affix Notarial Seal)

ADVANTAGE ONE MORTGAGE CORP., A CORPORATION

Gilbert Torres, President

8151 Peters Rd # 2000

Plantation, FL 33324

(Seal)

This instrument prepared by:

FLORIDA ASSIGNMENT OF MORTGAGE/CORPORATION OR PARTNERSHIP
10/24/06
Page 2 of 2

DocMagic *eForms* 800-649-1362
www.docmagic.com

Escrow File No. ████

OR BK 26212 PG 1317
LAST PAGE

## EXHIBIT "A"

Lot 1 at Block 12 of SUNSET SHORES, according to the Plat thereof, as recorded in Plat Book 127, Page 36 of the Public Records of Miami-Dade County, Florida.

7212 SW 149th Court Miami, FL 33193

A.M.J.

M.A.T.



```
CFN 2009R0532117
OR Bk 26950 Pg 2502; (1pg)
RECORDED 07/23/2009 08:38:06
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE
```

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS:

That **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**, Assignor, in consideration of the sum of Ten and 00/100 Dollars and other valuable consideration, received from or on behalf of **BAC HOME LOANS SERVICING, L.P. FKA COUNTRYWIDE HOME LOANS SERVICING, L. P.**, 7105 CORPORATE DRIVE, PLANO, TX 75024, Assignee, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, does hereby grant, bargain, sell, assign, transfer and set over unto the Assignee a certain mortgage bearing the date of **10/23/2007**, made by **ANA MARIA JOHNSON AND MARCO A. TAPIA, WIFE AND HUSBAND** in favor of **ADVANTAGE ONE MORTGAGE CORP.** and recorded in Official Records Book 26212, Page 1299 and assigned in Official Records Book 26212, Page 1315, public records of Miami-Dade County, Florida, upon the following described place or parcel of land, situate and being in said County and State-to-wit:

LOT 1, BLOCK 12, SUNSET SHORES, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 127, PAGE(S) 36, PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

Together with the note(s) or obligation(s) described in said mortgage or deed of trust, WITHOUT RECOURSE, and the moneys due and to become due thereon, with interest.

This assignment relates back to 6/22/2009.

TO HAVE AND TO HOLD the same unto the said Assignee, its legal representatives, successors and assigns forever.

IN WITNESS WHEREOF the undersigned corporation has caused this instrument to be executed by its authorized officer.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _R. Rice_
Rhoena Rice - Vice President

Its: _VP Foreclosure_

[Corporate Seal]

STATE OF **TEXAS**
COUNTY OF **Tarrant**

On _July 2nd_ _____, 2009, before me, the undersigned, a Notary Public, personally appeared _Rhoena Rice_ known to me to be the _____ **Vice President** _____ of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. that executed the within instrument, and personally known to me to be the person who executed this instrument on behalf of said entity and acknowledged to me that he executed the same for the purposes and considerations therein expressed, and who did/did not take an oath.

_Brenda Kay Botzer_
NOTARY PUBLIC
In and for the State of **TEXAS**
My Commission Expires: _8/12/09_

This Instrument was prepared by:

Richard S. McIver, Esquire
Post Office Box 800
Tampa, Florida 33601-0800



```
BRENDA KAY BOTZER
Notary Public, State of Texas
My Commission Expires
August 12, 2009
```



CFN 2012R0777582
OR Bk 28335 Pg 3240; (1pg)
RECORDED 10/31/2012 07:23:55
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

**Record and Return:**
Aldridge Connors, LLP
7000 West Palmetto Park Rd. Suite 307
Boca Raton, FL 33433

MERS MIN # 
MERS Phone

**ASSIGNMENT OF MORTGAGE**

KNOWN ALL MEN BY THESE PRESENTS:

That **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS NOMINEE FOR ADVANTAGE ONE MORTGAGE CORP.,it s successors and assigns,**pa rty of the first part, in consideration of the sum of Ten Dollars ($10.00) and other good and valuable considerations, received from or on behalf of **BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP** , party of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, does hereby grant, bargain, sell, assign, transfer and set over unto the said party of the second part a certain mortgage bearing the date of October 23, 2007, in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS NOMINEE FOR ADVANTAGE ONE MORTGAGE CORP., ITS SUCCESSORS AND ASSIGNS, executed by Ana Maria Johnson and Marco A. Tapia recorded in the public records of MIAMI-DADE County, Florida, Official Records Book 26212, Page 1299, upon the following described piece or parcel of land, situate and being in said County and State, to-wit:
LOT 1, BLOCK 12, SUNSET SHORES, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 127, PAGE 36, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

7212 SW 149TH CT, MIAMI, FL 33193
TO HAVE AND TO HOLD the same unto the said party of the second part, heirs, legal representatives, successors and assigns forever.

| | | |
|---|---|---|
| Signed: | As: | **Assistant Secretary** |
| Print Name: **Cecilia Rodriguez** | For: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS NOMINEE FOR ADVANTAGE ONE MORTGAGE CORP., its successors and assigns | |

Signed, sealed and delivered
in our presence:
Signed:

Print Name: **Aida Duenas**

Signed: *Mary Ann Hierman*

Print Name: Mary Ann Hierman

ACKNOWLEDGMENT
State of California
County of VENTURA                    )

On Sep 19, 2012 before me, _____ S. Greenwald Notary Public_____
(Insert name and title of the officer)

Personally appeared **Cecilia Rodriguez**
Who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature *S. Greenwald* (Seal)

S. GREENWALD
Commission # 1893744
Notary Public - California
Los Angeles County
My Comm. Expires Jun 25, 2014

1092-4631

2

CFN 2013R0126384
OR Bk 28491 Ps 2623; (1ps)
RECORDED 02/15/2013 10:42:55
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

Recording requested by:
BANK OF AMERICA, N.A.
SUCCESSOR BY MERGER TO BAC
HOME LOANS SERVICING, LP FKA
COUNTRYWIDE HOME LOANS
SERVICING, LP

When recorded mail to:
BANK OF AMERICA, N.A
DOCUMENT PROCESSING MAIL CODE
TX2-979-01-19
4500 AMON CARTER BLVD
FORT WORTH, TX 76155
Attn: ASSIGNMENT UNIT

CORPORATION ASSIGNMENT OF MORTGAGE
Doc. ID#
Commitment

For value received, the undersigned, BANK OF AMERICA, N.A. SUCCESSOR BY
MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING,
LP, 1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063, hereby grants, assigns and
transfers to:
NATIONSTAR MORTGAGE LLC
350 HIGHLAND DR., LEWISVILLE, TX 75067-4177

All its interest under that certain Mortgage dated 10/23/07, executed by: ANA
MARIE JOHNSON and MARCO A TAPIA, Mortgagor as per MORTGAGE recorded as
Instrument No. 2008R0119181 on 2/12/08 in Book OR 26212 Page 1299 of official
records in the County Recorder's Office of MIAMI-DADE County, FLORIDA.
    Tax Parcel = 3049330470940,    MIAMI DADE COUNTY TAX COLLECTOR
Original Mortgage $196,000.00
7212 SW 149 COURT, MIAMI, FL 33193

Together with the Note or Notes therein described or referred to, the money
due and to become due thereon with interest, and all rights accrued or to
accrue under said Mortgage.

Dated: 11/08/2012      BANK OF AMERICA, N.A. SUCCESSOR BY MERGER TO BAC HOME
                       LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS
                       SERVICING, LP

By
      DAVID DE WAARD, ASSISTANT VICE PRESIDENT

State of California
County of Ventura

On 11/08/2012 before me, KATHY SERRANO , Notary Public, personally appeared
DAVID DE WAARD, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her their
authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature:
            KATHY SERRANO

KATHY SERRANO
Commission # 1962571
Notary Public - California
Los Angeles County
My Comm. Expires Dec 27, 2015

Prepared by: SEVAN APIK
1800 TAPO CANYON ROAD
SIMI VALLEY, CA 93063
Phone#: (213) 345-1489

1092-4631

CFN: 20160518332 BOOK 30218 PAGE 2376
DATE:09/06/2016 09:59:29 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

Recording Requested By:
HMC ASSETS

When Recorded Return To:

HMC ASSETS
ATTN: SHARON CHASE
2015 N MANHATTAN BEACH BLVD, STE 200,
REDONDO BEACH, CA  90278

## CORPORATE ASSIGNMENT OF MORTGAGE

Miami-Dade, Florida
SELLER'S SERVICING████████ "JOHNSON"

Date of Assignment: June 27th, 2016
Assignor: NATIONSTAR MORTGAGE LLC at 8950 CYPRESS WATERS BLVD, COPPELL, TX  75019
Assignee: COMMUNITY LOAN FUND OF NEW JERSEY, INC. at 108 CHURCH STREET, 3RD FLOOR, NEW BRUNSWICK, NJ  08901
Executed By: ANA MARIA JOHNSON AND MARCO A TAPIA, WIFE AND HUSBAND  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ADVANTAGE ONE MORTGAGE CORP.
Date of Mortgage: 10/23/2007 Recorded: 02/12/2008  In Book/Reel/Liber: 26212 Page/Folio: 1299 as Instrument No.: 2008R0119181  In the County of Miami-Dade, State of Florida.

Property Address: 7212 SW 149 COURT, MIAMI, FL  33193

Legal: "N/A

The Assignor does convey, grant, assign, transfer and set over the Note secured by the described Mortgage to the Assignee."

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $196,000.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

NATIONSTAR MORTGAGE LLC
On June 27th, 2016

By: _____
MOHAMED HAMEED, Assistant
Secretary

STATE OF Texas
COUNTY OF Dallas

On June 27, 2016, before me, COLLEEN BARNETT, a Notary Public in and for Dallas in the State of Texas, personally appeared MOHAMED HAMEED, Assistant Secretary, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
COLLEEN BARNETT
Notary Expires: 11/30/2019  #130453613

COLLEEN BARNETT
Notary Public, State of Texas
Comm. Expires 11-30-2019
Notary ID 130453613
(This area for notarial seal)

Prepared By:
Matthew Wesner,  Nationstar Mortgage 8950 CYPRESS WATERS BLVD, COPPELL, TX  75019 1-888-480-2432

CFN: 20160518333 BOOK 30218 PAGE 2377
DATE:09/06/2016  09:59:29 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

Recording requested by and
When recorded mail to:
HMC Assets, LLC
2015 Manhattan Beach Blvd #200
Redondo Beach, CA 90278
Document prepared by:  Caroline Rhee
2015 Manhattan Beach Suite 200
Redondo Beach, CA 90278

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**Assignment of Mortgage**

For value received, the undersigned hereby grants, assigns and transfers to

HMC Assets, LLC solely in its capacity as Separate Trustee of Community
Development Fund I Trust

All beneficial interest under that certain Mortgage dated October 23, 2007 executed
by Ana Maria Johnson and Marco A Tapia, wife and husband, Trustor(s) to Mortgage
Electronic Registration Systems, Inc. as nominee for Advantage One Mortgage Corp.
as Beneficiary and recorded on February 12, 2008 as Book 26212 Page 1299 and
CFN # 2008R0119181 of Official Records in the office of the County Recorder of
Miami-Dade County, State of Florida, together with the Promissory Note secured by
said Mortgage and also all rights accrued or to accrue under said Mortgage and Note.

Property Address:  7212 SW 149th Court, Miami, FL 33193

**Dated**  July 14, 2016

Community Loan Fund of New Jersey, Inc.

By _____
Wayne T. Meyer, President

State of          New Jersey
County of        Essex

On this _14_ day of July 2016, before me the undersigned, a Notary Public, in and
for the said State and County, personally appeared Wayne T. Meyer, known to me to
be the person whose name is subscribed to and in the within instrument on behalf of
Community Loan Fund of New Jersey, Inc.

I certify UNDER PENALTY OF PERJURY under the laws of the State of New Jersey
that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Danielle Rosen_          (Seal)

DANIELLE ROSEN
Notary Public, State of New Jersey
My Commission Expires
December 03, 2018

Page 1 of 1

Prepared by:                                         When recorded return to:
Community Development Fund I Trust                       BSI Financial Services
2015 Manhattan Beach Blvd                        1425 Greenway Drive, Suite 400
Suite 100                                                     Irving, TX 75038
Redondo Beach, CA 90278

## LIMITED POWER OF ATTORNEY

This Limited Power of Attorney is made in connection with that certain Sub-Servicing or Servicing Agreement by and between HMC Assets, LLC solely in its capacity as Separate Trustee of Community Development Fund I Trust (the "Owner") and Servis One, Inc. a Delaware corporation, licensed as Servis One, Inc. in Florida and licensed as Servis One, Inc. d/b/a/ BSI Financial Services, in all other jurisdictions in which business is conducted (the "Servicer") dated as of January 8, 2016 (the "Servicing Agreement").

Owner hereby makes, constitutes and appoints Servicer for Owner's benefit and in Owner's name, place, and stead, as Owner's true and lawful attorney-in-fact, with full power of substitution, to act in any manner necessary and proper to exercise the servicing and administrative powers set forth in the Servicing Agreement with respect to those loans and REO properties the servicing for which has been transferred to the Servicer pursuant to the terms of the Servicing Agreement. Such powers include the authority to execute the following documents:

1. Mortgage and trust deed assignments;
2. Note endorsements and allonges;
3. Substitutions of trustee;
4. Deeds of conveyance (including, without limitation, warranty deeds, grant deeds and quitclaim deeds);
5. Trust deed reconveyance and mortgage release documents;
6. Partial releases and subordination agreements;
7. Affidavits (including, without limitation, lost note affidavits, military affidavits and affidavits of indebtedness);
8. Powers of attorney (i) concerning any process related to effecting a lien release upon payment of a loan in full, or (ii) used to process any foreclosure, bankruptcy or other related activity concerning a loan in default;
9. HUD-1 settlement statements;
10. Endorsement of insurance claim proceeds checks;
11. Insurance claims and filings;
12. Approved, standard hold harmless agreements regarding payment of property insurance proceeds to Servicer for the benefit of the Owner or to the Owner;
13. Documents in connection with any bankruptcy (including, without limitation, Bankruptcy Declaration in support of Motions for Relief from Stay);

1

14. Contracts and purchase agreements for sale of real estate;
15. Settlement agreements, consent judgments, stipulated dismissals, stipulations and releases, as may be necessary; and
16. All other normal and customary documents related to the foreclosure and/or sale of real estate.

Owner gives said Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing necessary and proper to carry into effect the limited power or powers granted by or under this Limited Power of Attorney as fully as the undersigned might or could do, and does hereby ratify and confirm to all that this Limited Power of Attorney is effective as of the date hereof.

Owner will not be responsible for inspection of any items being executed pursuant to this Limited Power of Attorney and as such, is relying upon the Servicer to undertake whatever procedures may be necessary to confirm the accuracy of such items.

Any third party may rely upon a copy of this Limited Power of Attorney, to the same extent as if it were an original, and shall be entitled to rely on a writing signed by the Servicer to establish conclusively the identity of a particular right, power, capacity, asset, liability, obligation, property, loan or commitment of Servicer for all purposes of this Limited Power of Attorney.

Servicer shall not be obligated to furnish a bond or other security in connection with its actions hereunder.  Servicer hereby agrees to indemnify and hold Owner and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of or in connection with the exercise by Servicer of the powers granted to it hereunder. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the Servicing Agreement.

Owner authorizes Servicer, by and through any of its directors or officers, or any other employee who is duly authorized by Servicer to certify, deliver and/or record copies and originals of this Limited Power of Attorney.  Servicer's employees executing such documents in the name of Owner necessary to properly service and administer mortgage loans must hold the office of Document Executing Officer or Assistant Vice President or higher.

If any provision of this Limited Power of Attorney shall be held invalid, illegal or unenforceable, the validity, legality or enforceability of the other provisions hereof shall not be affected thereby.  This Limited Power of Attorney is entered into and shall be governed by the laws of the State of Texas without regard to conflicts of law principles of such state.

[Signature page follows]

2

IN WITNESS WHEREOF HMC Assets, LLC solely in its capacity as Separate Trustee of Community Development Fund I Trust, as Owner has caused this Limited Power of Attorney to be executed by its duly authorized representative as of February 24, 2017.

**HMC Assets, LLC solely in its capacity as Separate Trustee of Community Development Fund I Trust**

Name: Gary McCarthy
Title: Member of HMC Assets, LLC, as Administrator

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

State of **California**        ) ss
County of **Los Angeles**     )

On **02/24/2017** before me **Diana Ly** Notary Public, personally appeared **Gary W. McCarthy**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify UNDER PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

DIANA LY
Notary Public - California
Los Angeles County
Commission # 2106638
My Comm. Expires Apr 12, 2019

Notary Signature

[Notary Seal]

3